Court, please call the next case. 210-0756, Caterpillar v. Richard Kowalski Good afternoon. May it please the Court, Counsel, Liz LeBaron on behalf of the respondent, Caterpillar, Inc. Petitioner filed a claim in this case alleging a repetitive trauma to his left thumb using an accident date of February 7, 2006. The arbitrator found that there was a failure of proof and denied the benefits under the act. Petitioner then sought a commission review. The commission, on its own motion, then amended the application for adjustment of claim to an accident date of March 7, 2003, almost three full years prior to the initial date of accident. The commission then found that Petitioner sustained an accident on that date. Our respondent contends that the commission decision is contrary to both law and against the manifest weight of the evidence. Oh, you say contrary to law. Is the commission legally precluded from changing the manifestation date in accordance with the evidence? No, it can't. It clearly can conform to the evidence that's presented. I'm saying that in this circumstance the commission has misapplied Freeman. And if you look at Freeman, which requires there to be the same injury for an amendment, that the commission is incorrect. The commission decision here is based upon an assumption that all work at Caterpillar presents the identical risk of injury to the left thumb. This assumption is not supported by the evidence in the record. The evidence clearly establishes that the petitioner's job duties changed over his years of service at Caterpillar, and it references several different positions. The position that Petitioner held from October 6, 2003 up until the date of hearing was that of a tube bender. That is all of his trial testimony. He described that job and each step in that process in great detail. On March 7, 2003, he has a single appointment with Dr. Rogenkamp, and he wants to get a thumb condition on record prior to having left carpal tunnel surgery. He tells Dr. Rogenkamp that he's working in a large and medium spindle cell, and that he's running five machines. He also tells Dr. Showalter, respondent's IME physician, that he ran a five machine complex, which we can assume might be the large and medium spindle cell, but there's nothing in the record to indicate that those are the same job positions. The petitioner also tells Dr. Showalter that his left thumb complaints began when he was working as a lathe and gear shaver. There's no indication in the record at what period of time he worked in that position. It had to have been sometime prior to 2003, possibly even before 2000. Petitioner only testified to job activities as a tube bender. There's absolutely no testimony what any of his other job positions required him to do. Instead, what he and the commission both say is that he suffered a repetitive trauma, and I feel a little bit like I'm in Harry Potter, and that you can just invoke the word repetitive trauma, and it has to be a repetitive trauma. It has to have some kind of magic property. An employee who suffers a repetitive trauma, however, bears the same burden of proof than an employee who suffers a specific trauma. And this is from Durand. That employee has to show that his injury arises out of his employment. Arising out of indicates that the origin of his injury must be in some risk connected to the employment. Isn't the testimony of Dr. Friedberg, though, there to establish that? Doesn't Dr. Friedberg present evidence that supports the commission's decision? Actually, no. Dr. Friedberg instead testified that not every job presents a risk of injury, and Dr. Friedberg specifically said to evaluate whether or not a risk of injury was present, he would evaluate certain risk factors. Those risk factors include the repetition, the force used in performing the task, the positioning of the body while performing the task, the magnitude of the load being used, and whether or not the machines were functioning properly. Well, didn't Friedberg testify that the claimant's condition could have, in whole or in part, been caused, aggravated, or accelerated by the performance of his work duties? Friedberg didn't help the claimant. Is that what you're saying? Friedberg helped the claimant, but Friedberg worked backwards. What Friedberg said is that the petitioner has an overuse injury, and then he says because he has an overuse injury, it must have happened at work, without knowing any of the details of exactly what the petitioner did. If you look at Dr. Friedberg's testimony, he says that I believe the petitioner worked assembling pipes or something. Dr. Friedberg also thought that the petitioner had performed the identical job task for his 30-some years at Caterpillar. Well, he worked over 30 years doing the same thing. Obviously, Friedberg knew the claimant had, for years, been performing repetitive motions, which put strain upon his thumb, and based upon the observation, he opined that the claimant suffered a repetitive trauma injury after working over 30 years for the employer. Isn't that what Friedberg said? That's what Friedberg said, but that doesn't prove that there was any risk associated at Caterpillar. Well, the Commission obviously believed him. Well, the Commission didn't necessarily believe that Dr. Friedberg felt that his job duties in February of 2006 caused a repetitive injury. If they believed that that was the case, then they wouldn't have had any need to amend the application back to March 7th of 2003. I think Respondent did a very good job of showing, through the testimony of its safety person, Chuck Johnson, that that two-bending job did not present a risk of injury to the left thumb. You have to remember that the petitioner is right-handed, so what was he doing to put his left thumb at risk of developing arthritis? I mean, he has activities of daily living. The record also shows he played guitar. That's an activity of daily living. Was his work any different than that activity? It's very unclear from this record. So be your position summary that there's no evidence to support the Commission's decision? That is, in fact, my case. The Commission decision to amend the accident date is also based on this same assumption that all job duties prevent the identical risk of injury. To amend an application to conform to proofs, the petitioner must show that the injury does not arise out of a wholly different injury. And this is the Lake State engineering case. In Lake State engineering, the petitioner has suffered two different injuries, one at Navy Pier, one earlier in Indiana. The Supreme Court said that you could not amend back to the earlier injury because they were two separate ones. In Freeman, when the court amended the application, you had a petitioner who clearly on the record was performing the identical duties. And the Commission said that it was proper to amend the proofs to go back to the original date of seeing the outside doctor. The petitioner had initially chosen the date of surgery for his accident date. This is not the case here because there were different duties, or it's very unclear what his duties were in March of 2003 or at any time earlier at any of the other positions. Thank you. Thank you, Counsel. Counsel Blaine. May it please this Honorable Court, Matt Walker. And Counsel. Matt Walker on behalf of the petitioner Richard Petoskey. This case mirrors the case of Freeman United Coal versus Workers' Compensation, or the Industrial Commission. In the case of Freeman, the injured worker suffered a repetitive trauma injury to his upper extremities based upon the fact that he was required to use a wrench in an awkward position. The application for adjustment of claim in that case originally alleged an accident date of August 25th of 1992. The arbitrator found against the injured worker and said they had failed to prove accident and causal connection as related to that date of injury. Had he already recovered for carpal tunnel in 2002 and 2003? In our case, Your Honor? Yes. Correct. And what was the purpose that he reported the injury to his thumb? He reported the injury to his thumb, Your Honor, in March of 2003 in order to make sure that it was on the record with Caterpillar. What did Dr. Showalter have to say? Dr. Showalter indicated that based upon what the petitioner told him during the Section 12 evaluation, that the job description which he wrote down in his report was a competent cause for the injury suffered by the petitioner to his left thumb. Showalter was the employer's examining physician? Showalter was the employer's examining physician. He initially gave just simply a recitation of the medical, did not give a causal connection opinion. In subsequent addendum, he addressed causal connection, giving causal connection to the March 3rd, 2003 incident and was essentially equivocal about the July, I'm sorry, the 2006 injury, but did say that the job duties of the petitioner in 2006 did not prove, did not impose additional risk on the petitioner at that time as opposed to the job descriptions contained in Dr. Showalter's report. So one is left to assume Dr. Showalter, unfortunately, was not deposed. Dr. Freeburg was deposed. But Dr. Showalter in saying there's no additional risk, I would say that the court could assume or the commission could infer that the job duties of 2003 and 2006 were equal. The court found in Freeman United Coal that the commission's decision to sua sponte amend the date of accident was justified. And as counsel talked about, they referenced the case of McLean Trucking and compared it with Lake State Engineering. Counsel talked about Lake State Engineering in that there were two discrete acute injuries in that case. The first was an injury that occurred at Navy Pier during a lifting episode. A second injury occurred later during lifting in Indiana. In the case of Lake State, I'm sorry, in the case of McLean Trucking, there was one continuous injury. And the fact that our case in front of the court today mirrors Freeman United Coal, it is also our contention that it more closely mirrors McLean Trucking as opposed to the Lake State case. Because in our case, although the petitioner's job titles and the machines that he worked changed throughout his 30 years at Caterpillar, the actual physical repetitive activities that he performed with his upper extremities were substantially similar, as testified to by Dr. Friedberg in his deposition about the 30 years of work the petitioner had performed at Caterpillar and substantiated by Dr. Showalter in his IME or Section 12 evaluation in where he indicated that the job duties in 2003 did not pose any additional risk, or the job duties in 2006 did not pose any additional risk than the job duties in 2003 and that 2003 was a competent cause for the problem in the first carpal metacarpal joint. The record is clear also that Mr. Petoskey did not have any problems with his left thumb prior to March 3rd of 2003. That's contained in the March 7th, 2003 note authored by the Caterpillar physician, Dr. Rogenkamp. In that same note, the plant physician, Dr. Rogenkamp, gave a recitation of the job duties being performed by Mr. Petoskey in 2003 at the spindle cell. Those duties included repetitive forceful use of the hands running five different machines, use of a hand ratchet for a number of nuts to tighten and loosen bolts on fixtures, heavy gripping while changing tooling, and in addition to that note by the company physician, there was also in the record an employee incident report filled out by the petitioner on March 7th, 2003 that noted duties to consist of ratcheting, lifting heavy tools, and pushing and pulling parts. Pushing and pulling parts is one of the specific job duties that Dr. Freeburg referenced in his deposition testimony. The petitioner also indicated in that report that his work contributed to his injury, to his belief. Mr. Petoskey also testified that he had returned to the Caterpillar physician on at least two occasions after 2003 complaining about his thumb. He testified that the Caterpillar physician was a nice doctor but that he tended to brush him off. The commission also referenced in the record that the petitioner sought medical advice on August 17th, 2004 from Dr. Pankaj, October 20th of 2004 with Dr. Pankaj, and again on November 9th of 2005 with Dr. Hendo, and finally February 7th of 2006 after Dr. Hendo had referred the petitioner to Dr. Tsai, T-S-A-I, who was the hand surgeon who first saw Petitioner and made the first recommendation for surgical intervention. This supports our contention in the commission's decision that this was a continuous injury and not two isolated injuries as Caterpillar would have you believe, and as was put forth in the Lake State engineering case. Petitioners treating surgeon Dr. Freeberg and respondents examining physician Dr. Showalter gave causal connection opinions in this claim. If we look at this claim in the light of Freeman United Coal, then we would have to show you and the court would have to be convinced that this was in fact a single repetitive injury that progressed from 2003 to 2006. The commission looked at the record and found that the evidence did support that contention. In fact, respondents' own expert witness who they referenced, Mr. Chuck Jensen, did testify that the older guys at Caterpillar, and I think Mr. Petoskey, based upon his testimony and years at Caterpillar, would meet that description, tend to work through pain, and that's exactly what this petitioner did. He continued to work in pain for three years, and the courts have stated and restated that a petitioner or an injured worker will not be penalized for continuing to work through pain. And the courts have also been very clear, especially in Peoria-Bellwood, that the purpose of the act is that the burdens of caring for the casualties of industry be borne by that industry and not the employees or the public. I believe there is little doubt when the commission agrees that there was evidence that Mr. Petoskey's injuries did result from his work at Caterpillar. The commission agreed that the preponderance of the evidence showed that Mr. Petoskey's injuries arose out of and in the course of his employment, and the commission and the circuit court of King County did adhere to the clear purpose of the act in awarding benefits to Mr. Petoskey as a result of his work injury, and it is our prayer today that this honorable court will feel fit to do the same. Wherefore, the appellee respectfully prays that this honorable court uphold the decision of Judge Caldwell at the circuit court, affirming the decision of the commission in its entirety. Thank you, counsel. Rebuttal. Thank you. First, there is no evidence in the record that the petitioner worked through pain, as Mr. Jensen speculated. The petitioner reported a left thumb pain prior to having left carpal tunnel surgery. He then does not seek any medical treatment for another 17 months. So I'm not certain that that represents working through the pain. Secondly, Dr. Showalter indicates that petitioner's left thumb complaints began while he was working as a lathe and gear shaver. There is no indication in the record at what time period this activity took place, and it appears on the face of the record that it took place prior to the statute of limitations. The statute of limitations would have expired, I believe, March 7, 2003. Or February 7, 2003, I'm sorry. Again, counsel is indicating that we're dealing with one repetitive activity. This is not a case where there is clear evidence in the record that over a long period of time, the petitioner performed substantially the same duties. We have a right-handed petitioner who might have been using a ratchet when he was in the spindle and gear shaver, but there's no indication that he was using his left hand to perform that task. We don't know how any of these machines were operated. Were they push-button machines? Were they operated by foot pedal like the two bending machines were? Again, it's unclear in the record. I'd also like to distinguish McLean Trucking. In that case, the petitioner moved to amend the application date, and there was no objection by the respondent, clearly different in this case. This case is similar to Lake State Engineering. To show that there was a risk of injury greater than that to which the general public is exposed, the petitioner must present evidence of that risk of injury. Here, petitioner only showed that he worked for Caterpillar during those time periods. There is nothing in the record to indicate that that work presented a risk to his left thumb. Thank you. Thank you, counsel. Of course, we'll take the matter under driver's disposition.